1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAYMOND JOSEPH GARCIA,   )    No. C 05-2292 JSW (PR)
                    )
        Petitioner,   )    **ORDER DENYING**
                    )    **PETITION FOR WRIT OF**
  vs.               )    **HABEAS CORPUS**
                    )
J. BROWN, Warden,      )
                    )
        Respondent.   )
_____)

## INTRODUCTION

Petitioner, a prisoner of the State of California incarcerated at San Quentin, has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254.  This Court ordered Respondent to show cause why a writ should not issue.  Respondent filed an answer, memorandum and exhibits in support thereof and Petitioner has not filed a traverse.  For the reasons stated below, the petition is denied on the merits.

## PROCEDURAL BACKGROUND

On November 5, 2003, Petitioner was convicted by a jury of two counts of second-degree robbery, and one count of assault with a deadly weapon.  The jury also found that Petitioner used a deadly weapon in the commission of those offenses.  For another charge of second-degree robbery, the jury found petitioner guilty of the lesser included offense of theft.  For another charge of assault with a deadly weapon, the jury found petitioner guilty of the lesser included offense of assault.  Petitioner was sentenced to five years in state prison.

Petitioner appealed his conviction to the California Court of Appeal, Sixth District, which affirmed the conviction in an unpublished, reasoned opinion filed February 14, 2005.  On

April 20, 2005, the California Supreme Court denied review.  On June 6, 2005, Petitioner filed the instant petition.

### FACTUAL BACKGROUND

The facts underlying the charged offenses, as found by the California Court of Appeal, are summarized as follows:

Shortly before 11 p.m. on June 12, 2003, William Phillips was the sole checker whose register was open at the Albertson's at 430 Blossom Hill Road in San Jose when defendant pushed a shopping cart filled with groceries and beer behind Phillips. Customers pointed out to Phillips that defendant was leaving the store without having gone through the check-out line.

Phillips followed defendant out of the store. Grocery bagger Jeff Hull was in the parking lot collecting shopping carts, and Phillips advised Hull of the situation. Store manager Greg Gouveia also was in the parking lot. As Phillips and Hull started to approach defendant, they signaled to Gouveia to join them. The three approached defendant as he was loading beer and groceries from the cart into the trunk of a car. The employees could tell the items being transferred to defendant's car had not been checked out since the groceries were loose and had not been bagged. Defendant did not verbally respond when Gouveia asked him, "Are you going to pay for those groceries?" or "Hey, are you going to pay for that?" Instead, he closed the trunk and got into the car.

At that point, while the three Albertson's employees were standing behind defendant's car,  Phillips grabbed defendant's shopping cart and Gouveia asked defendant, "Are you going to hit us?" Customer Jeff Carter saw the three men talking to defendant while they stood behind defendant's car. Without comment, defendant started the ignition and put his car in reverse; his tires spun as he "peeled out" of his parking space in the direction of the employees and the shopping cart since they were "right behind" the trunk of defendant's car. Phillips and Hull each testified that, if he had stayed where he was, he "would have been hit," that he and the other two employees scattered to avoid being hit, and that defendant's car passed over the spot where they had stood. Defendant's car hit the shopping cart and sent it rolling down another aisle in the lot.

Phillips caught up with the cart in the next aisle. Defendant put his car in forward, turned down that next aisle, and drove "fast" towards the cart and Phillips. Although defendant's car never got closer to him than five to ten feet, Phillips shoved the cart at defendant's car. Phillips testified he was "afraid" that he might get hit by the car, that he "jumped over some bushes" to avoid being hit, and that, if he had not done so, he would "have been hit."

When the police arrived in response to Gouveia's call from inside the store, Hull provided them with most of the license number of defendant's car. Within the next 90 minutes, police asked Gouveia to view a suspect, namely, the defendant. Gouveia identified defendant as the person who took the groceries and drove the car. He also identified defendant's car as the one that had backed out in the direction of the employees.

The jury viewed the store's security videotape and photographs that partially showed the events that had occurred in the parking lot. The customer who witnessed the incident testified that the photograph introduced into evidence as "People's No. 2" depicted defendant's car and the damage to the car "from hitting the shopping cart," including a panel that was "ripped back."

Monica G., defendant's minor live-in girlfriend from February to June 12, 2003, testified at trial despite her reluctance to do so. She first denied that defendant told her any details regarding the Albertson's incident or that she had seen him when he arrived home from Albertson's, but she was impeached with her preliminary hearing testimony and with statements she had made to the police on the night of the incident.[1]

Evidence was introduced that, at the preliminary hearing, Monica testified defendant came home with "two cases of beer" and some other things "from Albertson's" and told her he was "stealing food" from Albertson's and that he was confronted by store clerks, one of whom dared him by asking whether he was going to hit somebody. Monica testified that defendant told her he reversed his car in the direction of the employees in his path and that he hit "somebody," but that he later, after "his mom started crying," said he "wasn't too sure" if he hit someone.

Evidence also was introduced [through the testimony of San Jose Police Officer Jennifer Kurz] that, on the night of the incident at Albertson's, Monica told a police officer that defendant reported that he had stolen groceries from Albertson's, that store clerks "confronted" him outside the store, that one dared him by asking if defendant was going to run him over, that he had put his car in reverse and driven "directly towards the employees behind the car in his path," that he saw the cart strike the employee, and that he then put the car in forward and drove directly at the clerk who had the cart. Monica told the officer that defendant said, "I ran over two people tonight. I have a funny feeling I'm going to get caught for stealing and hitting them. But I don't give a fuck."

*People v. Garcia*, No. H026912, 2005 Cal. App. Unpub. LEXIS 1245, at *2-7 (Cal. Ct. App. Feb. 14, 2005) (footnotes omitted).

## **STANDARD OF REVIEW**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

---

[1] When presented with evidence of her earlier statements, Monica G. still denied that Petitioner came home with groceries or told her about the incident. She claimed that she lied the night of the robbery and during the preliminary hearing because she was angry at Petitioner. Reporter's Transcript ("RT") 209, 226.

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor,* 529 U.S. 362, 413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case.  *Id.*  As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable."  *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) (citing *Williams*, 529 U.S. at 405-07), *overruled in part on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

In deciding whether the state court's decision is contrary to, or an unreasonable application of clearly established federal law, a federal court looks to the decision of the highest

4

state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson,* 217 F.3d 663, 669 n.7 (9th Cir. 2000). If the state court only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. *See Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001).

## DISCUSSION

### I.     Instructional Errors to the Jury

Petitioner argues that several errors in the jury instructions denied him due process. Petitioner contends that the trial court's instruction on possession of stolen property unconstitutionally reduced the prosecution's burden of proof. Petitioner also claims that the court's instruction on flight invited the jury to make an irrational inference. Petitioner is not entitled to federal habeas relief on either claim.

### A.     Legal Standard

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle*, 502 U.S. at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). *See also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].")). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *See, e.g., Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam) (no reasonable likelihood that jury misled by single contrary instruction on imperfect self-defense defining "imminent peril" where

5

three other instructions correctly stated the law); *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

In reviewing a challenged instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S. at 72 & n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). *See, e.g., Ficklin v. Hatcher*, 177 F.3d 1147, 1150-51 (9th Cir. 1999) ("harmless error" when certain that jury did not rely on constitutionally infirm instruction). However, the determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. *See Calderon v. Coleman*, 525 U.S. 141, 146 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), before granting relief in habeas proceedings. *See Calderon*, 525 U.S. at 146-47; *Payton v. Woodford*, 346 F.3d 1204, 1215-16 (9th Cir. 2003), *rev'd on other grounds by Brown v. Payton*, 125 S.Ct. 1432 (2005).

**B.     Analysis**

**1.     Possession of Stolen Property**

The trial court instructed the jury, over Petitioner's objection, that an inference was permissible based on Petitioner's possession of stolen property. The instruction, CALJIC 2.15, was read as follows:

> If you find that the defendant was in possession of recently stolen property, the fact of that possession is not, by itself, sufficient to permit an inference that the defendant, Raymond Garcia, is guilty of the crime of robbery. Before guilt may be inferred, there must be corroborating evidence tending to prove the defendant's guilt. However, this corroborating evidence need only be slight, and need not, by itself, be sufficient to warrant an inference of guilt. As corroboration, you may consider the attributes of possession, for example, time, place, and manner, that the defendant had an opportunity to commit the crime charged, the defendant's conduct, or statements he may have made with reference to their property. And any other evidence which tends to connect the defendant with the crime charged.

RT at 314. Petitioner argues that this instruction unconstitutionally reduced the prosecution's

burden of proof.

The California Court of Appeal is the highest state court to address the merits of this claim in a reasoned decision. Therefore, this Court looks to the analysis of the Court of Appeal in evaluating Petitioner's claim. *LaJoie*, 217 F.3d at 669 n.7. The Court of Appeal considered and rejected this claim under state law, finding that CALJIC 2.15 is constitutional because it prohibits an inference of guilt based solely on possession of the property, and instead requires corroborating evidence that could reasonably support an inference of guilt. *Garcia*, 2005 Cal. App. Unpub. LEXIS 1245, at *8. In the instant case, the court noted the existence of substantial corroborating evidence, specifically the eyewitness testimony and the statements made by Petitioner's girlfriend to police the night of the robbery. *Id.* at *10. The court went on to find that the corroborating evidence was sufficient by itself to prove that Petitioner committed the robbery. *Id.*

The California Court of Appeal also held that even if the trial court erred, any error in giving the possession of stolen property instruction was harmless. *Id.* The Court of Appeal found that in light of the strong evidence of the robbery, it was not reasonably probable that the jury would have reached a result more favorable to Petitioner had it not been given the instruction. *Id.*

On a federal habeas petition, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S. at 72 & n.4. In the instant case, the instruction at issue is an inference instruction. The first step in analyzing whether an instruction that creates an evidentiary inference violates due process by relieving the State of its burden of proving each element of a crime beyond a reasonable doubt is to determine whether the instruction creates a mandatory presumption or a permissive inference. *United States v. Warren*, 25 F.3d 890, 897 (9th Cir. 1994) (analyzing whether jury instruction shifted burden of proof by determining whether inference permissive or mandatory). "A mandatory presumption tells the jury that it

must presume that an element of a crime has been proven if the government proves certain predicate facts." *Id.* By contrast, "a permissive inference instruction allows, but does not require, a jury to infer a specified conclusion if the government proves certain predicate facts." *Id.* An instruction that creates a mandatory presumption violates due process because it "directly foreclose[s] independent jury consideration of whether the facts proved establish[ ] certain elements of [the charged offense] ... and relieve[s] the State of its burden of ... proving by evidence every essential element of [the] crime beyond a reasonable doubt." *Carella v. California*, 491 U.S. 263, 265-66 (1989).

An instruction such as CALJIC 2.15 that merely creates a permissive inference does not shift the burden of proof, but it nonetheless violates due process unless it can be said "'with substantial assurance' that the inferred fact is 'more likely than not to flow from the proved fact on which it is made to depend.'" *County Court of Ulster County v. Allen*, 442 U.S. 140, 167 & n. 28 (1979) (quoting *Leary v. United States*, 395 U.S. 6, 36 (1969)). Courts "determine the constitutionality of a permissive inference instruction on a case-by-case basis" by reviewing the record evidence to see if the court can say with substantial assurance that the inferred fact flows more probably than not from the facts proven in the particular case. *See Warren*, 25 F.3d at 898; *see, e.g., Ulster County*, 442 U.S. at 162-67 (finding instruction constitutional only after concluding that inference more probably than not flowed from specific facts proven to jury at trial).

Although a presumption relieving the prosecution of its burden of proof as to an element of the offense is a structural defect, where the presumed fact is not an element of the offense, the error is reviewed for harmlessness. *United States v. Trevino*, 419 F.3d 896, 903 (9th Cir. 2005). In determining whether the erroneous presumption instruction was harmless, the court assesses the evidence for alternative facts sufficient to prove the element for which the presumed fact was proffered. *Id.*

Permissive inference instructions generally are disfavored because they tend to take the

focus away from the elements that must be proved.  *See Hanna v. Riveland*, 87 F.3d 1034, 1037 (9th Cir. 1996) (instruction that person who is speeding "may be inferred to have driven in a reckless manner" creates permissive inference).  Such instructions are less objectionable if other instructions condition, qualify or explain them.  *See id.* at 1038.  However, a passing reference in the instructions to "consider all evidence" will not cure a defect where a jury is entitled to convict by focusing on a few isolated facts.  *See id.*

If the inference instruction violated the petitioner's right to due process, the petitioner can only obtain relief if the unconstitutional inference instruction resulted in actual prejudice under *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  *See Patterson v. Gomez*, 223 F.3d 959, 967-68 (9th Cir. 2000); *Hanna*, 87 F.3d at 1039.  Actual prejudice exists if the unconstitutional instruction had a "substantial influence on the conviction."  *Id.*

Here, the Court is satisfied that there is a "substantial assurance" that the inference that Petitioner committed the robbery more likely than not flowed from his possession of the stolen property under the facts proven in this case. *Ulster County*, 442 U.S. at 162-67.  Moreover, while CALJIC No. 2.15 states that the corroborating evidence "need only be slight," the corroborating evidence in Petitioner's case was strong.  William Philips testified that he saw Petitioner walk out of Albertson's with a cart full of groceries without paying for them.  RT 107.  Philips, Jeff Hull, and Greg Gouveia all testified that Petitioner put the groceries in his car, assaulted them, and left the parking lot.  *Id.* at 110-11, *Id.* at 155-158, *Id.* at 175-176.  Jeff Carter also testified to the events in the parking lot.  *Id.* at 192-193.  San Jose Police Officer Jennifer Kurz testified that on the night of the robbery, Petitioner's girlfriend told police that Petitioner admitted stealing the groceries and driving towards the employees.  *Id.* at 237.  Due to the strength of the evidence against Petitioner, there is little likelihood of any misapplication of the instruction by the jury.  *Estelle*, 502 U.S. at 72 & n.4.

Petitioner argues that possession of stolen property cannot support an inference that he used force or fear during the robbery.  CALJIC 2.15 did not, however, invite the jury to make

that inference. The instruction specifically stated that possession of the stolen properly could not, by itself, be sufficient for a determination of guilt beyond a reasonable doubt. Instead, the jury was permitted to consider that evidence together with any other corroborating evidence in the record that connected Petitioner to the crime charged, specifically directing the jury to consider "consider the attributes of possession, for example, time, place, and manner, that the defendant had an opportunity to commit the crime charged, the defendant's conduct, or statements he may have made with reference to their property." RT at 314. The instruction further instructed the jury to consider other evidence tending to connect Petitioner to the robbery. *Id.* And, the jury was properly instructed on the elements required to convict Petitioner of robbery, RT at 319-20, including the required finding of the use of force or fear, *Id.* While the claimed error in the use of this instruction in a robbery case could potentially be problematic where the use of force or fear to effectuate the theft was placed in issue, it cannot be said that under the holding of *Ulster,* the state court's analysis is incorrect here, where there was overwhelming evidence of Petitioner's use of force to effect the robbery.

Additionally, an inference instruction must also be considered in the context of the other instructions that were given to the jury. Here the jury was instructed: (1) to "determine what facts have been proven from the evidence received in the trial," RT 307 (CALJIC No. 1.00); (2) to "consider the instructions as a whole and each in light of all the others," RT 308 (CALJIC No. 1.01); (3) "before an inference essential to establish guilt may be found to have been proven beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt," RT 312 (CALJIC No. 2.01); (4) "in order to prove [the crime of robbery], each of the . . . elements must be proved," RT 320 (CALJIC No. 9.40); and (5) that "a defendant in a criminal action is presumed to be innocent until the contrary is proved" placing "upon the People the burden of proving him guilty beyond a reasonable doubt," RT 318 (CALJIC No. 2.90). Reading CALJIC No. 2.15 together with the other instructions, the Court agrees with the appellate court's conclusion that it is not likely the

10

jury applied the instruction in a way that violated due process. *Id.*

Furthermore, even if Petitioner had demonstrated that the jury applied CALJIC 2.15 in a way that violated the Constitution, he has failed to show that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  As previously discussed, the witness testimony included ample evidence that Petitioner committed the robbery.  Because Petitioner has not shown any "actual prejudice" from the jury being given CALJIC 2.15, he is not entitled to federal habeas relief on this claim. *Id.*

In sum, there is no reasonable likelihood that the jury applied CALJIC No. 2.15 in an unconstitutional manner, based on the jury instructions as a whole and the strong corroborating evidence in the trial record.  Petitioner has failed to make the requisite showing for habeas relief, specifically, that the instruction, when considered in the context of the instructions as a whole, so infected the trial that the resulting conviction violated due process.  See *Estelle*, 502 U.S. at 72.  This Court finds that the state court's determination that the instruction on stolen property was appropriate was not contrary to, or an unreasonable interpretation of, established Supreme Court precedent.  Accordingly, Petitioner's claim is denied.

**2.     Flight**

The trial court instructed the jury, over Petitioner's objection, that an inference of guilt was permissible based on Petitioner's flight from the crime scene.  The instruction, CALJIC 2.52, was read as follows:

> The flight of a person immediately after the commission of a crime is not sufficient in itself to establish his guilt, but is a fact, which if proved, may be considered by you in light of all other proved facts in deciding whether a defendant is guilty or not guilty.  The weight to which this circumstance is entitled is a matter for you to decide.

RT 316.  Petitioner argues that the flight instruction was prejudicial under the facts of this case.  Petitioner argues that, because he was already in flight before the alleged assault occurred, the instruction invited the jury to make the irrational inference that his flight was relevant to prove

1  his guilt of the assault charges.

2      The California Court of Appeal rejected Petitioner's claim, finding that the trial court did

3  not err by giving the flight instruction.  The court held that CALJIC 2.52 was constitutional

4  because the instruction explained that flight alone was insufficient evidence to establish guilt,

5  and instructed the jury to only give the flight evidence as much significance as they saw fit.

6  *Garcia*, 2005 Cal. App. Unpub. LEXIS 1245, at *12.  The Court of Appeal also found that,

7  contrary to Petitioner's argument, there was evidence that Petitioner fled the parking lot after

8  stealing the groceries and assaulting the store employees.  *Id.*  The court pointed to the witness

9  testimony that Petitioner drove away as evidence that Petitioner fled to avoid being arrested for

10 the assault.  *Id.*

11     The Court of Appeal further held that even if the trial court erred, any error in giving the

12 flight instruction was harmless.  *Id.*  The Court of Appeal found that Petitioner had not shown

13 that the jury relied on the instruction to his detriment.  *Id.*

14

15     Because CALJIC 2.52 creates a permissive, not mandatory, inference, it does not violate

16 due process if it can be said "'with substantial assurance' that the inferred fact is 'more likely

17 than not to flow from the proved fact on which it is made to depend.'"  *Ulster County*, 442 U.S.

18 at 167 & n. 28 (quoting *Leary v. United States,* 395 U.S. 6, 36 (1969)).  Here, the Court is

19 satisfied that there is a "substantial assurance" that the inference that Petitioner had a

20 consciousness of guilt more likely than not flowed from his flight and the other proven facts.

21     As is the rule in federal criminal cases in this circuit, "[e]vidence of flight is generally

22 admissible as evidence of consciousness of guilt and of guilt itself."  *United States v. Harris*,

23 792 F.2d 866, 869 (9th Cir. 1986).  Its probative value depends upon inferences drawn: "(1)

24 from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from

25 consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from

26 consciousness of guilt concerning the crime charged to actual guilt of the crime charged."

27 *United States v.  Felix-Gutierrez*, 940 F.2d 1200, 1207 (9th Cir. 1991), *cert. denied*, 508 U.S.

12

906 (1993) (citations omitted).

Moreover, CALJIC 2.52 is explicit in allowing the jury to use flight only "if proved." While the instruction allows a jury to consider flight in light of other "proved facts," it clearly allows the jury to first conclude that there was no flight or, if it found there was flight, to accord little or no significance to that fact.

The facts of Petitioner's case support the Court's of Appeal's determination that the trial court did not err in charging the jury with CALJIC No. 2.52. There was sufficient evidence that Petitioner fled the store after taking the groceries and fled the parking lot after assaulting the employees with his car. The other proven facts in the case, based on the witness testimony, video footage, and statements by Petitioner's girlfriend, all support the inference that Petitioner's flight was evidence of his consciousness of guilt. This Court finds that it can be said "'with substantial assurance' that the inferred fact[s]'more likely than not...flow from the proved fact[s] on which [they]...depend.'" *Ulster County*, 442 U.S. at 167 & n. 28 (quoting *Leary v. United States,* 395 U.S. 6, 36 (1969)). Because the jury was explicitly instructed that evidence of flight is not sufficient in itself to establish guilt, Petitioner cannot show that the jury applied the instruction in a way that violated the Constitution. *Estelle*, 502 U.S. at 72

Petitioner has also failed to show that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). In light of the substantial evidence against Petitioner, it is unlikely the jury would have reached a result more favorable to Petitioner had it not been given CALJIC 2.52. Because Petitioner has not shown any "actual prejudice" from this instruction, he is not entitled to federal habeas relief on this claim. *Id.*

Furthermore, Petitioner does not rely on any authority from the Supreme Court which supports his claim that the instruction was impermissible under the facts of his case. The Court finds that the state court's determination that the flight instruction was appropriate was not

contrary to, or an unreasonable interpretation of, established Supreme Court precedent. Accordingly, the claim is denied.

**II.    Application of _Blakely_ to Consecutive Sentences**

The trial court imposed a base sentence of three years for the second-degree robbery charged in count one, which was the middle-term for that offense.  The court then imposed a consecutive sentence of one year for the second-degree robbery charged in count two, and another consecutive sentence of one year for the assault with a deadly weapon charged in count five.  Both of the additional consecutive sentences were based on one-third of the three-year middle-terms for those convictions.  The trial court explained that it imposed consecutive sentences because the additional counts involved separate victims and separate felonies. _Garcia_, 2005 Cal. App. Unpub. LEXIS 1245, at *13.

California Penal Code §§ 669 and 1170 give the trial court discretion to determine whether sentences will be served consecutively or concurrently.  The statute states that "[w]hen any person is convicted of two or more crimes . . . the second or other subsequent judgment . . . shall direct whether the terms of imprisonment . . . shall run concurrently or consecutively." Ca. Penal Code § 669 (2007).  California Rules of Court state that one of the matters to be considered by the trial court during sentencing is "whether the sentences will be consecutive or concurrent." Cal. R. Ct. 4.33(c).  The statute also gives judges criteria to use in deciding if sentences should be consecutive or concurrent, including "facts relating to the crimes" (Ca. R. Ct. 4.425(a)), "any circumstances in aggravation or mitigation" (Ca. R. Ct. 4.425(b)), and "whether the crimes involved separate acts of violence or threats of violence" (Ca. R. Ct. 4.425(a)(2)).

Petitioner contends that the sentence imposed was invalid because he was entitled to a jury trial on any fact that warranted consecutive sentences.  For the reasons stated below, Petitioner is not entitled to federal habeas relief on these claims.

14

### A.   Legal Standard

In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000). The "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant. *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004), (the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings); *United States v. Booker*, 543 U.S. 220 (2005), (holding that *Blakely* applies to the federal sentencing guidelines); *Cunningham v. California*, 127 S. Ct. 856, 871 (2007), (finding the Court's decisions from *Apprendi* to *Booker* point to the middle term specified in California's statutes, not the upper term, as the relevant statutory maximum; therefore, California's determinate sentencing law violates the Sixth Amendment because it authorizes the judge, not the jury, to find the facts permitting an upper term sentence).

### B.   Analysis

The California Court of Appeal reviewed Petitioner's sentence in light of *Apprendi* and *Blakely* and rejected his claim. The court held that the principles in *Apprendi* and *Blakely* do not apply to Petitioner's case because Petitioner was convicted of several felonies, and *Apprendi* and *Blakely* both involved convictions for a single count. *Garcia*, 2005 Cal. App. Unpub. LEXIS 1245, at *22. The court found that the trial court had discretion to impose consecutive sentences for these separate felonies without any additional finding of fact. *Id.*

The California Court of Appeal correctly applied *Apprendi* and *Blakely* in rejecting Petitioner's claim and Petitioner is not entitled to federal habeas relief. Petitioner's situation is factually distinguishable from *Blakely* and *Apprendi* and his reliance on that rule is misplaced. Petitioner's consecutive sentence was fully authorized by the jury's findings. The jury found

Petitioner guilty beyond a reasonable doubt of the three separate felonies charged in counts one, two, and five.  The relevant California statute allows a judge to impose consecutive sentences if defendant is convicted of multiple crimes without any additional findings of fact.  *See* Ca. R. Ct. 4.433(c).  The trial judge did not, therefore, increase Petitioner's sentence *beyond* that which was statutorily authorized by the jury's finding.  Rather, he exercised his discretion to impose a sentence that was within the maximum sentence allowable on the basis of the facts already reflected in the jury verdict.  *Blakely*, 542 U.S. at 303.

The Eastern District recently reached the same conclusion when faced with a similar claim.  In *Moctezuma v. Yates*, petitioner Moctezuma had pled no contest to charges of voluntary manslaughter, three counts of assault with a firearm, and an enhancement for personal use of a firearm.  2006 U.S. Dist. LEXIS 81638 at *3.  The trial judge imposed the negotiated sentence, which set one of the assault convictions to run consecutively against the other convictions.  *Id*.  Moctezuma later filed a petition for habeas corpus in the Eastern District of California, claiming that his negotiated sentence violated his Sixth Amendment rights under *Blakely*.  Moctezuma claimed, among other things, that imposition of consecutive sentences violated *Blakely*.  The District Court disagreed, finding that "because consecutive sentencing in California does not involve any judicial factfinding, see California Rule of Court 4.433(c), *Blakely* simply is not implicated." *Id*. at 13.

The Court of Appeals for the Ninth Circuit reached a similar conclusion regarding the decision to impose consecutive sentences in federal cases.  *United States v. Fifield*, 432 F.3d 1056 (9th Cir. 2005).  In *Fifield*, the district court ordered defendant's federal sentences to run consecutively to his state sentences on related convictions.  *Id*. at 1059.  On appeal, defendant argued that the decision to run his sentence consecutively violated his Sixth Amendment right to a jury trial because the decision was made on the basis of facts not found by the jury.  *Id*. at 1066.  The Court of Appeal  held that, because 18 U.S.C. § 3584 did not require the district court to find any particular fact to impose consecutive sentences, the decision to do so did not

16

violate the Sixth Amendment. *Id*. at 1067. The court added that "judicial factfinding does not, on its own, violate the Sixth Amendment, even when that factfinding is the basis for enhancing a defendant's sentence." *Id.* at 1066.

The Supreme Court recently held that California's determinate sentencing law (DSL), which prescribes a lower, middle, and upper term of punishment for enumerated offenses, implicates *Apprendi* and violates the Sixth and Fourteenth Amendments. *See Cunningham v. California*, 127 S. Ct. 856, 860 (2007). The Court found that the middle-term was the "relevant statutory maximum" under *Apprendi* and that the DSL was thus unconstitutional because it allows a trial judge to conduct non-jury fact-finding in deciding whether to impose the upper term sentence. *See id*. *Cunningham* was decided after Petitioner filed his claim. However, the holding affords him no basis for federal habeas relief.

In *Cunningham,* the Court held that the middle-term was the relevant statutory maximum for *Apprendi* purposes and disapproved of a trial judge's ability to impose an upper-term sentence on the basis of non-jury fact-finding. In the instant case, the trial judge actually sentenced Petitioner to the middle-term on the underlying offense. Because the judge did not impose the upper-term, *Cunningham* has no bearing on Petitioner's claim. Furthermore, in *Cunningham* the Court reiterated its approval, as it had in *Apprendi*, for judicial sentencing discretion: "[w]e have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *Id.* at 866.

Here, the trial court properly exercised its broad discretion to "impos[e] a sentence within a statutory range" when it chose to impose consecutive sentences for three separate felony convictions. *Id.* All three charges were submitted to the jury and found beyond a reasonable doubt. The trial court did not make non-jury factual determinations to elevate Petitioner's punishment beyond a statutory range. On this record, the state courts' rejection of Petitioner's claim was not contrary to, or involved an unreasonable application of, *Apprendi* and its progeny. See 28 U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief on this

1  claim.

2                          **<u>CONCLUSION</u>**

3        For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The

4  Clerk shall enter judgment for Respondent and close the file.

5        IT IS SO ORDERED.

6  DATED: October 25, 2007

7                          *Jeffrey S White*
                           _____
8                          JEFFREY S. WHITE
                           United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

GARCIA,

              Plaintiff,

  v.

PEOPLE OF THE STATE OF CALIFORNIA
et al,

              Defendant.
_____/

Case Number: CV05-02292 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 25, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Allen Robert Crown
Attorney General's Office
P.O. Box 944255
1300 I Street
Sacramento, CA 94244-2550

Raymond Joseph Garcia
San Quentin State Prison
V28032
San Quentin, CA 94974

Dated: October 25, 2007

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk